The second credibility of this article is that it is called the study of all conclusions. We can't say with any certainty that I, David Starr, was alert to those mistakes. Let me ask you about one of those errors and about one of the issues that I'm having trouble with. On page 20 of the IJ's decision, in when the IJ, she says, in reviewing the Respondent's testimony in its totality, the Court must conclude it is not credible and that her documents do not help her. Now, the next thing that the IJ does is references the fact that her passport seems to have been issued a few weeks before the birth record, which I understand her to say is used to obtain the passport. Now, that's key to me because she's trying to say she, the immigration judge, is not convinced that Kaur is who she says she is. Now, that to me kind of struck me hard because, aside from all the other inconsistencies, she's saying, gee, I don't know who you are, I don't know who you are. But she bases it on the fact that the birth certificate was issued before the passport and that that was used to get the passport. Now, what happened there with the passport, the birth certificate, if you can help me? Well, and this used to be a key statement, so I think what your argument would be then, we have to send it back. Because she made a critical error. Oh, I know, but this is fairly critical because she pins it on her identity and the other things, and it's sort of the basis that runs through her decision. Yeah, that bothers me. So she made a little mistake. She doubted that Ms. Kaur was affiliated with the Kaur government. Referring to the State Department's country profile, the IG suggested that the organization to which Ms. Kaur belonged was now called Shearer-Lohman-Kaur. She suggested that there would no longer be a round name in Ms. Kaur's name. The State Department's country profile said the opposite. It said that in May 1994, Ms. Kaur had been involved in several factions within the Kaur government. This was something less than successful. It goes on to say that any applicant claiming membership should be able to identify the factions in which he or she belongs. She doubted that Ms. Kaur's husband had participated in the 1990 legislative assembly election. And in doing so, she referred exclusively to chronology of events that took place in New York. These elections that Ms. Kaur was involved in took place in New York State. Mr. Job, I have a question about the remedy that you're requesting. Sorry about this. I'm having trouble talking loud. Why, in your view, should this case be remanded if we conclude, as you argue, that some or most of the major bases for the adverse credibility finding are not supported by substantial evidence? Why wouldn't we simply say that if there's no support for an adverse credibility finding, she's to be believed, and then it would be remanded, requiring? I guess I don't understand the scope of the remand. Are you saying for a new credibility finding or for the remainder of the analysis? I think, actually, we should go back. I know you're raising a question about your case. I don't answer it. That's why I don't see this as a point to make. But there are some problems. For example, at one point, she was asked about her application. Her application says the problem that I'm looking at is that she doesn't believe that. And there were four other ways that we could prosecute her, and that the judges were not. She was asked about that, and she said, I was not affected. That's one thing that I see here that is born out of that fact. But the record is not perfect. I don't think there is substantial evidence to support that. She herself said that a number of the things that she pointed out here were not the case itself. I think the most appropriate question is, of course, if the fact that you raised the question of self-harm in the first instance, whether the individuals that you identified and pointed out had a major form of self-harm are among those that you think are not a case, and there are four of them in the back of the room. How do you feel that, at this point, you've made that call? Going back to the Summertime Marriage case, she just doubted that Ms. Carr had been arrested and beaten in 1990. Ms. Carr didn't say that she was beaten. Now, I want to actually go to the record. There, Ms. Carr was asked to describe the substance of her testimony. She said that she was nervous and frightened, but she didn't have to say that. She was like a broken person. No one ever followed up to clarify what she meant by that. She made all of that. Ms. Carr said that she was nervous and frightened, but she didn't have to say that. The second thing that was wrong for the immigration judge was to assume that he would have gone through with his testimony. He saw 10 days after he was arrested. I thought, you know, that 10 days later he would have. The immigration judge relied on speculation. The immigration judge found the fact that Ms. Carr's husband had been arrested and jailed in 1993. At this point, he actually said that he had come back from Iraq. Ms. Carr's application says that her husband was arrested and jailed in November of 1996. Oh, for more than a year. I believe she was jailed for more than a year. She clearly had come back from Iraq. She made the case that she had come back from Iraq. On her testimony, she consistently explained that she came back from Iraq and that she did come back from Iraq. The IJ doubted that Ms. Carr had been raped, as she testified. This is another reason for re-evaluation. The deciding question for this was to see if this was true or not. The immigration judge, she didn't have the benefit of either of the reports. Ms. Carr's son versus Ashcroft, I think both were decided after the investigation. Because of that, I think it's probably appropriate to simulcrate that. After this left out of the application, Ms. Carr's son versus Ashcroft, and if there's more time, Ms. Carr's son versus Ashcroft. You may do so. Mr. McLaughlin?  Well, with regard to the question of not fully discussing the details of the rape in the application, do you agree that our subsequent cases have said that that is not an adequate basis for adverse credibility finding? Okay. In this case, she says on the application that she was, quote, insulted, and then there's a little parenthetical that says something like, more details will be supplied later. Now, why is that different from, or somehow taking away from the credibility of her testimony in this regard? In the entire picture of her testimony, in the entire picture of her credibility, she did with her testimony throughout, one of the most significant things in the investigation that I highlighted in the application was that she didn't give her testimony about what happened to her husband. What happened to her husband? She simply doesn't have to tell us about what happened to her husband. It wasn't even there for her, but it didn't describe anything about what happened to her husband. Well, okay. So you're saying it isn't so much that there's any inconsistency between the application and the testimony, but just that there wasn't much detail about the rape in her testimony. Is that what you're trying to say? Well, where's the inconsistency? Let's just start with it, with regard to the rape. Where is there any inconsistency? Then, the court has to look for whether there's substantial evidence. The immigration judge was there, and the immigration judge listened to the testimony. The immigration judge was there, and the immigration judge listened to the testimony. On the endoscope of the entire story, the evidence that the person was describing, and based on that information, the immigration judge said, No, I'm not saying this is still a lie. And that's why there's substantial evidence, and that's why she was convicted of a certain crime. What about this date? Oh, I'm sorry. I didn't mean that. No, I'm sorry. I read that passage from the IJ where she expressed the opinion that she was not sure that this was the proper identity, referring to the birth certificate and the passport. That doesn't tie, unless I'm missing something. There's another point in the IJ's decision, and I don't have time to go into that one, but she talks about the explanation of the date, and the birth certificate, and the birth certificate. Yes. Remember, now, that this is a moral decision to be made, and that's why the IJ made it clear that the date was not valid. The immigration judge basically allowed the dates in general. This is your explanation, and I understand that. Having heard your testimony, I don't buy it. So it is – again, this is a situation just as I discussed with Judge Graber. Well, that's nice in general, but she does not use it general. She – see, the idea that the IJ says, I don't think I know who you are and you haven't proved who you are, is more important to me than a lot of things in here. Because certainly if we don't know who this person is, how are you going to offer them asylum? That's key. When she says – the IJ says, when I look at your birth certificate and you said that this was given to obtain your passport, this is the basis because I'm doubting these documents for me to doubt your identity. But is she saying, I just don't like the documents, or is she tying it to specific dates because the birth certificate was issued after the passport was issued? In this case, frankly, Your Honor, I think this is a marvelous IJ decision because she discusses what she thinks are the most important discrepancies first and then says – and I really tried to help her out by looking at the collateral documents and collateral issues to try to find things that would bolster her case, and instead I found things that did not bolster her case. She did not find that this was – I believe the IJ found that identity was a serious issue in this case and that therefore it was a problem. I don't think it's necessarily an issue that should cause the case to be remanded. Based on the entire – the IJ has this enormous litany of extremely central material issues. Except that she didn't say that. She said the things I just talked about for a few pages here are not of great concern. The thing that really bothers me, she says, is that the only word she wants to put on her application is insulted, when now she wants to tell us that that means that she was raped. That was the IJ's central concern. That was one of the IJ's central concerns. The IJ was also very concerned about the fact of this – of the allegation that there was a death threat against her if she failed to cooperate or if she and her husband failed to cooperate, they'd be found floating in the river, was mentioned in her declaration. And even though the IJ attempted to get her to testify about that at the trial, she failed to do so. She wouldn't do that. That was another example of an extremely – something extremely central to her fear that caused her to leave the country. If I might, Your Honor, let me turn this around and say none of this is any reason to remand the case because the IJ did make an alternate finding regarding asylum, which is supported by the record. There is no basis for asylum in this case. There is no nexus between the rape based on the description of the – in her testimony or anywhere else and any protected grounds. The government – the police conducted a sweep, a legitimate sweep, based on a kidnapping that had taken place. They went to locations where they had previously found people they thought were bad and rounded everybody up, including Mrs. Cower, and whether or not they regarded she was bad, it wasn't singling out her. They picked her up. She watched her husband being abused. She herself was abused to some extent by the police, and then she was taken into another room and raped. All they said to her was that they had picked her up because of this kidnapping and that they thought – and they mentioned the word scoundrel throughout. There is absolutely complete support for the IJ's finding that there's no evidence here of any religion connection and there's no evidence of any political connection here. There's no evidence that she would – that they were trying to terrorize her or terrorize her husband or there's – and there's no evidence of a religious or political connection. Now, the Petitioner would have you believe that because there's no evidence at all of anything, therefore, the court should infer that it must be because of her religion or her politics. And that's simply false. The evidence is they were conducting a legitimate sweep. They picked her up for that reason. She was in their custody. And because she's in their custody, the police have a history, regardless of your religion and regardless of your politics, of extorting money from people. Let me ask you sort of a logical progression question. I want you to assume for the purpose of this question that we were to find that the adverse credibility determination is not supported by substantial evidence. And I know you strenuously disagree with that, but I want you to assume it for this. I was just assuming that for that argument. What's the second step? Do we then assume that all of her testimony is credible and move on to look at whether this alternative basis is supported? And if it is, we deny the petition. And if it isn't, we remand for it. You may do that, or also you can approach the asylum question to begin with. Assuming that her testimony was credible, and you don't have to assume that her statement that she subjectively fears returning is credible, but assuming that her testimony is credible, the only incident that you have to look to is this single one-day arrest based not on her identity but the fact that she was present at a location in which she was raped. And based on this court's case law, as cited to the court in Respondent's Brief, the fact that you're raped doesn't mean that you've been persecuted. And if you look at Elias Zacharias, Elias Zacharias was a person who was picked up and who was extorted from, and there just wasn't any nexus between that and a protected ground, and that's exactly what the judge found in this case. There's no evidence here that would support asylum in the case, period, even if you believe everything that she says. Are you saying, then, even if we believe all of the husband's political activity, there's nothing there that shows that she had political activity? There's nothing that says that she had political activity, and everything in the record says that she was never harmed as a result of her husband's political activity. Everything in the record. There is nothing in the record that says that she was ever harmed based on her husband. Well, how do you interpret the facts, given you're going to take her story for what it is, that they were both picked up together, they were both brought to the police station, she observed what was going on with the husband, and was forced to observe that, insulted, if you will, and then was brought into another room and raped. How do we interpret all that? The fact that she... That they were just harassing her because... She was picked up not because of who she was, but by the fact that she was in a particular location. The fact that they did this in front of her, did something to him in front of her, or did something to her in front of him, was part of their investigation. That part doesn't add up to harassment. That part doesn't amount to persecution. Nor does... Are we to infer that they were doing this because they wanted the husband to confess, and by having the wife there, that coerced the husband? I don't quite understand why... There's nothing that's clear about why they were doing it at all. What is clear is that the only thing that potentially amounts to persecution, even according to the petitioner in the case, the only thing that potentially amounts to persecution is this rape, and there's no evidence that either the extortion or the rape were remotely associated with anything political, hers or her husband's. Thank you, counsel. Thank you. Mr. Jobe, you have a little bit of rebuttal time left, and I'd appreciate it if you would address the alternative basis that the government's counsel has just discussed. Yes, Your Honor. First, I just want to make a brief comment about the lack of detail or alleged lack of detail with regard to the rape. This is set forth on page 95 of the record. Obviously, Ms. Cower with her fifth-grade education, she's a witness here. She can only answer the questions that are posed to her. And if you look at the questions, what did they do? I was raped. Did they beat you? And that answer is indiscernible. How long were you held in police custody? On the 27th, I was released. They didn't ask for any more detail. If they wanted more detail, they needed to ask. And you can't hold it against her if you don't ask for it. On account of issue, it's simply not true that there's no evidence in the record indicating that the arrest was politically motivated. What Ms. Cower testified was that her husband was held for a year, and then voices were raised throughout Punjab against the detention, the long-term detention of people in Punjab. And if you look at the country report, at this time there were 6,000 people being held in detention without charge. This is on page 170 of the administrative record. The government responded to those complaints by releasing people from their custody, but on pages 88 and 89 of the administrative record, Ms. Cower says, they were releasing them and then a few days later immediately re-arresting them, the same people that they had released. And she identifies three particular people aside from her husband that were released in response to these demands, spent a few days in freedom, and then re-arrested. And then her husband, 20 days after he was released, he's sick, he can barely get out of bed, and then the police come in and they arrest him and his wife, accuse them of kidnapping, and they say that the kidnapping was caused, was perpetrated by one of the members, that's a quote, one of the members of a Kali Dalman. That's direct evidence that the arrest was politically motivated. It doesn't get much better than that. Thank you, Counsel. The case just argued is submitted, and we will move then to Rondawa v. Ashcroft with the same counsel. And you may begin whenever you're ready. Thank you.
judges: Hall, Brunetti, Fisher